Calvin Ervin McNAC, Appellant,

v.

The STATE of Texas.

No. PD–1950–05.

Court of Criminal Appeals of Texas.

Feb. 14, 2007.

Sue Korioth, Dallas, for appellant.

1.  *McNac v. State*, No. 05–04–00492–CR, slip op. at 3, 2005 WL 1983551 (Tex.App.-Dallas, delivered August 18, 2005) (not designated for publication).

2.  Evidence was also presented at appellant's trial that on September 3, 2002, sixteen-year-old M.B. was staying with friends at an apartment complex in Dallas. She needed a ride to her cousins house in Pleasant Grove and arranged a ride from appellant's son. Appellant, instead of his son, showed up to give her a ride. M.B. got in the car with appellant, but instead of taking her to her cousin's house, appellant took her to his house. Appellant dragged M.B. by the hair into his house and painfully raped her. After raping

Anne B. Wetherholt, Dallas, Matthew Paul, State's Attorney, Austin, for state.

## *OPINION*

HERVEY, J., delivered the opinion of the Court in which, KELLER, P.J., MEYERS, PRICE, JOHNSON, KEASLER, HOLCOMB and COCHRAN, JJ., joined.

We granted discretionary review in this case to review the Court of Appeals's decision that any constitutional error in admitting *Crawford* evidence at the punishment phase of appellant's trial was harmless beyond a reasonable doubt because the other "evidence overwhelmingly showed appellant's guilt." [1] *See* Rule 44.2(a), Tex.R.App. Proc., (if appellate record in criminal case reveals constitutional error that is subject to a harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment).

Appellant was charged with the first-degree felony of aggravated sexual assault of a child, sixteen-year-old M.B. M.B. testified that appellant sexually assaulted her. [2] She also testified that appellant had

her, he left her alone in his bedroom and went to take a shower, but soon returned to forcefully rape her again. Early the next morning, appellant drove M.B. back to the apartments where he picked her up. M.B., visibly traumatized by the rape, told a friend, Nakesha Foster, what had happened. Foster called the police, and an ambulance took M.B. to the hospital where a rape-kit analysis was performed. At the hospital and in subsequent police questioning, M.B. gave a detailed description of appellant, appellant's car, and appellant's house.

Dallas police detective Jerry Williams contacted appellant about M.B. Appellant voluntarily came to an arranged appointment with

a gun and threatened to harm her if she told anyone. Evidence was presented that M.B. may have lied about the guns and the threats. Appellant testified and denied having sex with M.B. despite DNA evidence to the contrary. During cross-examination, appellant admitted that he had been arrested for an April 2003 assault of his wife (Tonia); however, he denied committing this offense.[3] The jury convicted appellant of the lesser second-degree felony of sexual assault of a child.[4]

The record from the punishment phase reflects that the State presented evidence of the details of appellant's April 2003 assault of his wife (Tonia), who did not testify at appellant's trial. Over appellant's Confrontation Clause objections under *Crawford v. Washington*,[5] the State presented, through the testimony of a security guard (Murray) and a Dallas police officer (Bryson), out-of-court statements that Tonia made to them about this 2003 assault. The Court of Appeals' opinion states:

> At the punishment phase of trial, the State introduced the testimony of Earl Murray, a security guard at an apartment complex. Murray testified that, in April 2003, he saw a man call a woman over to his car and start talking. The woman got in the car, and Murray noticed the couple's conversation "got kind

of loud." The car drove away and was "going kind of fast" when the woman attempted to get out of the car by opening the passenger door and sticking out her foot. The man driving the car "grabbed her in the back of the head" and slammed her head against the dash. A few minutes later, the woman "came tumbling out of the car," and Murray called police and an ambulance. The man drove away without stopping, and the woman, identified as appellant's wife, Tonia McNac, ran over to Murray and said the man was her husband.[6] Appellant objected to this testimony on the basis that it was testimonial and therefore "not within *Crawford's* limits." Appellant also objected that the State had not laid a foundation for the statement's admission as an excited utterance. The trial court overruled both objections.

Dallas police officer Hans Bryson testified he arrived on the scene and questioned Tonia, who was "very upset, hysterical, sobbing, [and] very visibly shaken." Appellant again objected to the admission of statements Tonia made to Bryson because the statements were hearsay and violated appellant's rights under the Confrontation Clause. The trial court overruled appellant's

---

Detective Williams, and admitted that he gave M.B. a ride in his car. However, he denied that she ever went inside his house and vehemently denied having sex with her. Only after further questioning by Detective Williams did appellant admit that M.B. had been in his house. A search warrant was obtained to search appellant's house, and a buccal swab was obtained from appellant. DNA evidence recovered from M.B.'s rape kit identified appellant as a possible contributor. The State's DNA expert testified that:

"the probability of finding an unrelated individual with—to include him the same way that Calvin McNac was, we will talk about it in three of the races, the probability of

seeing that again in the Caucasian race is one in 8.65 trillion; in the African–American one is 25.9 trillion; and Hispanic race is one in 5.54 trillion."

**3.** The jury was instructed at the guilt phase to consider this evidence only on the issue of appellant's credibility.

**4.** *See* TEX. PEN.CODE, § 22.011(a)(2).

**5.** 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**6.** Murray was unable to identify the man in the car.

objections, stating specifically the statements were not testimonial. Bryson testified Tonia told him that her husband, appellant, had "kept her overnight" and "was taking her to a different location" when, fearing for her safety, she tried to get out of the car and appellant bit her and "shoved her from the moving vehicle."

*See McNac*, slip op. at 2.

The State emphasized appellant's 2003 assault of Tonia in support of its jury argument that appellant is a "wife beater" and general abuser of women. The jury sentenced appellant to the maximum sentence of twenty years' confinement and a fine of $10,000.[7]

Appellant claimed on direct appeal that the admission of Tonia's out-of-court statements to Murray and Bryson violated his Confrontation Clause rights under *Crawford*. The Court of Appeals decided that Tonia's out-of-court statement to the security guard (Murray) that "the man who pushed her out of the car was her husband" was not "testimonial" and therefore admissible. *See McNac*, slip op. at 3. The Court of Appeals then decided that any constitutional error in admitting Tonia's out-of-court statements to the police officer (Bryson) was harmless beyond a reasonable doubt because the other "evidence overwhelmingly showed appellant's *guilt.*" *See McNac*, slip op. at 3 (emphasis added). The Court of Appeals decided:

> Here, Tonia told Murray the man who pushed her out of the car was her husband. Murray was a security guard and not a police officer. The statement Tonia made to Murray immediately followed her being thrown from a moving car. Whether or not this constituted an excited utterance, the statement was not made to police, and Tonia could not rea-

sonably expect the statement to be used prosecutorially. Under the circumstances of this case, we conclude the trial court did not abuse its discretion in ruling that Tonia's statement to Murray was not "testimonial" and therefore admissible. (Citations omitted).

Assuming without deciding that Tonia's statements to Bryson were "testimonial," we conclude appellant was not harmed by their admission. In the case of constitutional error, we must reverse a judgment of conviction and remand for a new trial unless we determine beyond a reasonable doubt that the error did not contribute to the conviction. (Citations omitted). If, without the erroneously admitted evidence, the record contains overwhelming evidence of guilt, then the error is harmless beyond a reasonable doubt. (Citation omitted). The record in this case shows M.B. claimed appellant took her to his house and raped her repeatedly. M.B. was able to describe the inside of appellant's house and identify appellant. DNA taken from M.B. via the rape kit indicated the probability of a match between appellant and the DNA as one in 25.9 trillion, more than the population of the world. Without considering Tonia's testimony [sic] for any purpose, the evidence overwhelmingly showed appellant's guilt. Under these circumstances, any error in admitting Tonia's statements was harmless beyond a reasonable doubt. (Citation omitted).

*See McNac*, slip op. at 3.

We exercised our discretionary authority to review this decision. The grounds upon which we granted discretionary review state:

1. Whether the Honorable Court of Appeals erred in failing and refusing to

---

7. *See* TEX. PEN.CODE, § 12.33.

consider the effect of the assumed *Crawford* error on the maximum twenty year sentence assessed in the case, even though the evidence the court assumed was erroneously admitted was admitted in the punishment phase of trial.

2. Whether the Honorable Court of Appeals misconstrued *Texas Rule of Appellate Procedure* 44.2(a) when it analyzed error in admission of punishment evidence by considering only whether the evidence at trial overwhelmingly proved appellant's guilt.

■ We agree with the claim in appellant's brief that "the Court of Appeals should have determined whether it could find—beyond a reasonable doubt—that the alleged error in admitting this punishment evidence contributed to the **sentence assessed,** not to the finding of guilt."[8] This evidence was admitted only during the punishment phase and was not offered during the guilt phase of the trial; therefore, the error could not have affected the outcome of the guilt phase of the trial. In addition, we are not persuaded by the State's argument that this Court should

decide that the Court of Appeals performed "a proper harm analysis as to punishment" because the Court of Appeals' opinion discussed all the admissible evidence, including Murray's punishment evidence.

■ We nevertheless agree with the State that "in the interest of judicial economy" a remand is unnecessary, and we will perform a harm analysis.[9] *See generally McDonald v. State,* 179 S.W.3d 571 (Tex. Cr.App.2005) and at 579–80 (Cochran, J., concurring). Appellant does not challenge the Court of Appeals' decision that the trial court properly admitted Tonia's out-of-court statement to the security guard (Murray) that the man who pushed her out of the moving car was her husband. *McNac,* slip op. At 3.[10] A proper harm analysis, therefore, would have to take into account this unchallenged evidence and that this unchallenged evidence shows that appellant pushed Tonia out of a moving car and then drove away.[11] In addition, this unchallenged evidence is essentially cumu-

---

**8.** Emphasis in original.

**9.** Appellant's brief on discretionary review offers the following harm analysis in this case.

> A proper harm analysis is necessary in this case. The aggravated assault on Tonia was the only extraneous offense which the State even attempted to prove at punishment. The only eye witness to the extraneous assault, Murray, admitted that he was many yards behind the vehicle when the offense allegedly occurred and that he could not identify appellant as the man in the car, and although he claimed to have seen the man push Tonia, he then admitted that the back window of the car was in fact tinted to a degree that it was blacked out, which essentially negated the value of his testimony. (Record reference omitted). In addition, the jury had obviously disbelieved the primary complainant (M.B.'s) testimony regarding a deadly weapon and deadly threats, since it found appellant guilty only

> of the lesser included sexual assault. (Record reference omitted). The State used the improperly proven extraneous aggravated assault along with [guilt phase] impeachment questions (not supported by any affirmative answers to such questions or extrinsic evidence of any extraneous assaults) to argue that appellant was a serial abuser of women and should be punished as such. (Footnote and record reference omitted). The jury responded by assessing the maximum legal penalty.

**10.** Other properly admitted evidence shows that appellant was Tonia's husband.

**11.** Appellant's proposed harm analysis set out in footnote nine does not take this unchallenged evidence into account. In addition, if we remanded this case to the Court of Appeals, nothing would prohibit it from incorporating this unchallenged evidence into another harm analysis.

lative of Tonia's out-of-court statements to Bryson.

The State also presented the testimony of Tonia's father, Dwayne Carter, to describe what he witnessed as a result of the appellant's violence toward himself and Tonia. Mr. Carter testified that the appellant had verbally threatened him on the phone and through letters. These threats promised violence to Mr. Carter because appellant believed that Mr. Carter was keeping Tonia away from appellant. Mr. Carter testified that he had seen his daughter on an occasion after appellant had beaten her. He recalled seeing her with a swollen face, bloodshot eyes, badly bruised on her legs and back, and bitten, all after fights with the appellant. The admission of this unchallenged evidence further reduces the likelihood that any error in admitting Tonia's out-of-court statements to Bryson "materially affected the jury's deliberations." *See Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex.Cr.App. 2000) (if there is a reasonable likelihood that erroneous admission of evidence in violation of constitution materially affected the jury's deliberations, then the error was not harmless beyond a reasonable doubt).

Under these circumstances, we determine beyond a reasonable doubt that any error in admitting Tonia's out-of-court statements to Bryson was harmless. *See Leday v. State*, 983 S.W.2d 713, 717 (Tex. Cr.App.1998) (improper admission of evidence is not reversible error if the same facts are shown by other evidence which is not challenged).

The judgment of the Court of Appeals is affirmed.

WOMACK, J., filed a dissenting opinion.

WOMACK, J., dissenting.

I agree that the Court of Appeals' opinion contained some incorrect language on harmless error, as the Court's opinion says in its first six pages. I do not agree that it is " 'in the interest of judicial economy' " (*ante*, at 422) for this Court also to do the harm analysis. The Court's process was to grant review, require the parties to brief the case, deliberate, and deliver an opinion. If we had summarily granted review and remanded the case to the Court of Appeals, it could have corrected its error without rebriefing some months ago. That would have been judicial economy.