# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-05-00495-CV

---

## In the Matter of C.E.

---

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. 2562B, HONORABLE GARY L. STEEL, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The trial court found that appellant C.E. engaged in delinquent conduct by committing the offense of aggravated sexual assault of a child and committed C.E. to the Texas Youth Commission for ten years. *See* Tex. Fam. Code Ann. § 54.03 (West Supp. 2006); Tex. Penal Code Ann. § 22.021 (West Supp. 2006). In his sole issue, C.E. asserts that the court violated his Fifth Amendment privilege against self-incrimination at the disposition hearing by admitting the testimony of his therapist concerning C.E.'s disclosure of two prior sexual assaults on children. We conclude that any error in the trial court's admission of the testimony was harmless because there was no objection to the inclusion of C.E.'s disclosure in the predisposition report that the court reviewed. *See* Tex. Fam. Code Ann. § 54.04(b) (West Supp. 2006). Accordingly, we affirm the trial court's judgment.

## BACKGROUND

C.E. was detained in a juvenile-detention center after the trial court entered an order finding probable cause to believe that C.E. had engaged in delinquent conduct, that C.E. might be a danger to himself or threaten the safety of the public if released, and that C.E. resided in the same home with the victim. The court entered subsequent detention orders holding C.E. until the juvenile probation department verified that the victim was removed from the home. C.E. was later released on house arrest with electronic monitoring.

At the adjudication hearing, C.E. pleaded true to the State's petition, which alleged that he had engaged in delinquent conduct on or about September 20, 2004, by committing the offense of aggravated sexual assault on a child younger than 14 years of age. *See* Tex. Penal Code Ann. § 22.021. The State's petition had previously been approved by a grand jury. *See* Tex. Fam. Code Ann. § 53.045 (West 2002). C.E. waived reading of the allegations in the State's petition, stipulated to the State's evidence, and waived trial by jury. Based on C.E.'s plea and the evidence, the court found that C.E. had engaged in the delinquent conduct alleged in the State's petition and proceeded to conduct the disposition phase of the hearing.

During the disposition phase, the State called C.E.'s therapist, John Morris, who stated that he began counseling C.E. on December 20, 2004, after C.E. was released from the detention center. The record is unclear about who initiated these counseling sessions. Morris testified that he thought that C.E. "would be at a high risk to reoffend." When the prosecutor asked why Morris believed that, Morris began by responding, "The number of victims—"

2

Anticipating the therapist's testimony, defense counsel interrupted and requested to take Morris on voir dire examination "[t]o determine whether or not the statements that were made by [C.E.] were—are admissible." After questioning Morris briefly, counsel objected to the admission of "any statements" from C.E., arguing that Morris saw C.E. through the juvenile probation department, "and it was somewhat a condition—[C.E.] had to be ordered to." Counsel further argued that Morris was an arm of the State and that any statements by C.E. were made during a custodial interrogation that should have been preceded by a "*Miranda* warning." *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Although he objected to C.E.'s statements "coming in," defense counsel stated twice that he did not object to Morris's opinion. The trial court overruled the objection but allowed a running objection on Morris's comments regarding his discussions with C.E.

When Morris continued with his testimony, he recalled C.E. stating that "he was there originally for committing a sexual offense against . . . a four-year-old boy" whom C.E. claimed to have assaulted two times. Morris then testified that on January 19, 2005, C.E. disclosed his sexual assaults of two additional victims: a four-year-old girl in Tennessee and a six-year-old boy in Texas. Morris opined that C.E. had a high risk to reoffend based on the number of his victims, his pattern of misbehavior, his violation of electronic monitoring, and the "cognitive distortions" that he used to justify his behavior. He stated that C.E. required long-term sex-offender treatment in a supervised, structured setting.

C.E.'s probation officer, Alissa Payne, also testified during the disposition hearing. She stated that C.E.'s supervision within the home was "very poor and inadequate, considering that

3

the offense took place in the home with dad in the next room." Payne also noted that C.E.'s father had not visited C.E. in the "last couple of months in detention."

The court also heard testimony from C.E.'s father, who stated that C.E. had been living with him for nine months. Previously, C.E. had been living with his mother, whom he had lived with since he was five years old. C.E.'s father agreed to make every effort to prevent C.E. from violating conditions of probation that the court might order.

In addition to the witnesses' testimony, the record reflects that the court considered the juvenile probation department's predisposition investigation report, which states, "[C.E.] has since disclosed victimizing two other children, a six-year-old boy cousin and a 4-year-old girl." Defense counsel did not object to this statement.

After hearing the testimony and considering the predisposition investigation report, the trial court ordered C.E. confined for 10 years in the Texas Youth Commission and the Texas Department of Criminal Justice, Institutional Division, and ordered him to register as a sex offender for life. This appeal followed.

## DISCUSSION

In his sole issue, C.E. contends that the trial court violated his Fifth Amendment privilege against self-incrimination by admitting Morris's testimony concerning C.E.'s disclosure of two prior sexual assaults on children. C.E. asserts that he was not given a *Miranda* warning before the counseling session. *See id*. The State asserts that C.E. was not in a custodial-interrogation situation and that Morris was not acting as an agent of the State when C.E. made his disclosure. Alternatively, the State argues that the admission of C.E.'s statements was harmless because the

4

defense waived any objection to Morris's consideration of those statements in rendering his opinion about C.E.'s risk to reoffend.

In reviewing claims of *Miranda* violations, we grant almost total deference to the trial court's determination of the historical facts that the record supports—especially when the court's factual findings are based on an evaluation of the witnesses' credibility and demeanor—and review de novo the trial court's rulings on application-of-law-to-fact questions that are not based on credibility and demeanor. *Ripkowski v. State*, 61 S.W.3d 378, 381-82 (Tex. Crim. App. 2001) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *In re L.M.*, 993 S.W.2d 276, 286 (Tex. App.—Austin 1999, pet. denied).

The Fifth Amendment provides, "No person shall . . . be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. This privilege against self-incrimination applies to adults and juveniles. *In re Gault*, 387 U.S. 1, 55 (1967); *In re V.P.*, 55 S.W.3d 25, 31 (Tex. App.—Austin 2001, pet. denied). Further, the privilege is applicable at both the sentencing and guilt-or-innocence phases of a criminal proceeding. *See Mitchell v. United States*, 526 U.S. 314, 328-29 (1999) (applying Fifth Amendment privilege to sentencing phase of adult criminal proceeding); *In re J.S.S.*, 20 S.W.3d 837, 844 (Tex. App.—El Paso 2000, pet. denied) (holding that Fifth Amendment privilege applies from conclusion of adjudication hearing through conclusion of disposition hearing in juvenile-delinquency proceeding).

The privilege against self-incrimination is implicated if the prosecution is allowed to use statements stemming from the defendant's custodial interrogation without applying procedural safeguards effective to secure the privilege. *See Miranda*, 385 U.S. at 444. In the

5

absence of other fully effective safeguards, a defendant's statements during custodial interrogation may only be used if, prior to interrogation, the defendant is given a *Miranda* warning—advising the defendant of the right to remain silent, that any statement made can be used against the defendant, and that the defendant has the right to counsel. *Id*.

A *Miranda* warning is only necessary when the defendant is subject to custodial interrogation. *Id*. Statements made by the defendant in this setting are inadmissible at trial unless proper *Miranda* warnings were given. *Id*. "Custodial interrogation" refers to questioning that is initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Id*.

Questioning "initiated by law enforcement officers" may include questioning by a court-ordered psychiatrist. *See Estelle v. Smith*, 451 U.S. 454, 467 (1981). A criminal defendant who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence may not be compelled to respond to a psychiatrist if the defendant's statements may be used against the defendant at a criminal proceeding. *Id*. at 468. Unless they are preceded by a *Miranda* warning, the statements to the psychiatrist will be inadmissible when offered against the defendant to prove the defendant's future dangerousness. *See id.*

But Fifth Amendment concerns are not necessarily presented by all types of interviews and examinations that might be ordered or relied on to inform a sentencing determination. *Id.* at 469 n.13. For instance, if the defendant initiates or requests a psychiatric evaluation or presents psychiatric evidence, then the prosecution may use statements from that same evaluation for rebuttal. *Buchanan v. Kentucky*, 483 U.S. 402, 422-23 (1987). A psychiatric evaluation that is

not court-ordered but is initiated by the defendant does not constitute custodial interrogation and need not be preceded by *Miranda* warnings. *See id*.

Thus, the threshold question in this case is whether C.E. was ordered by the court or otherwise compelled to attend psychiatric counseling with Morris. If C.E. was not so ordered or compelled, then he was not subject to custodial interrogation or entitled to *Miranda* warnings, and his incriminating statements to Morris cannot receive Fifth Amendment protection.

Nothing in this record clearly proves that C.E. was under court order or was otherwise compelled to attend psychiatric counseling with Morris. The order releasing C.E. from juvenile detention to house arrest does not contain any condition requiring C.E. to attend counseling nor is there any order initiating C.E.'s counseling. During his objection to the admission of C.E.'s statements, defense counsel stated that counseling was "somewhat a condition—[C.E.] had to be ordered to." There is a docket sheet entry on October 7, 2004, stating, "Counseling to be set-up immediately." A detention order signed on February 15, 2005, states "the child and/or family was previously referred to . . . counseling or psychological services" with "Dr. McNeil—Psychological Evaluation" and "New Braunfels Counseling Center—John Morris, RSOTP." The source of that referral is unspecified. Additionally, while Morris testified that he had seen C.E. "essentially through the juvenile probation department," C.E. acknowledges in his brief that the purpose of the regular meetings was for his treatment, "rather than for a law enforcement interrogation." The evidence in this record could suggest that C.E. was ordered to seek counseling by the probation department or—just as likely—that C.E. was encouraged to seek counseling and the probation department connected C.E. with Morris at C.E.'s request.

7

We need not decide this question, however, because we determine beyond a reasonable doubt that, even if the counseling were compelled and if the admission of the therapist's testimony about C.E.'s disclosure should not have been admitted, any such error was harmless and did not contribute to C.E.'s conviction or punishment. *See* Tex. R. App. P. 44.2(a).

C.E.'s disclosure of his previous sexual assaults on two other children was included in the juvenile probation department's predisposition investigation report. Section 54.04 of the family code authorizes the court to consider "written reports from probation officers, professional court employees, or professional consultants in addition to the testimony of witnesses" at the disposition hearing. *See* Tex. Fam. Code Ann. § 54.04(b); *see also In re J.A.W.*, 976 S.W.2d 260, 264 (Tex. App.—San Antonio 1998, no pet.) (concluding that court could consider detention center reports that neither party offered into evidence during disposition hearing); *In re A.F.*, 895 S.W.2d 481, 486 (Tex. App.—Austin 1995, no writ) (holding that court could consider social history report during disposition hearing).

In reaching its disposition, the court was entitled to consider the juvenile probation department's predisposition report, independent of Morris's testimony about what C.E. disclosed during his therapy session. Accordingly, any error in the court's ruling concerning the admissibility of Morris's testimony about C.E.'s previous sexual assaults was harmless. *See McNac v. State*, 215 S.W.3d 420, 424-25 (Tex. Crim. App. 2007) (citing *Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998) (holding that improper admission of evidence is not reversible error if same facts are shown by other evidence that is unchallenged)); *see also* Tex. Fam. Code Ann. § 54.04(b).

Because we have determined that any error in the admission of Morris's testimony about C.E.'s disclosure of two prior sexual assaults on children was harmless, we overrule C.E.'s sole issue.

**CONCLUSION**

Having overruled C.E.'s sole issue on appeal, we affirm the trial court's judgment.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   August 9, 2007