

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-17-00298-CR

———————————————

AARON AMBERSON, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. F17-1973-16

Before Sudderth, C.J.; Meier and Gabriel, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

## I. Introduction

In four issues, Appellant Aaron Amberson appeals his conviction for criminal mischief for which he was sentenced to ten years' confinement after pleading true to the habitual-offender enhancement allegations. *See* Tex. Penal Code Ann. § 28.03 (West Supp. 2018). We affirm.

## II. Background[1]

A 9-1-1 caller reported that someone driving an older model gray Ford Expedition had attached a chain to that vehicle and had pulled a coin-dispensing machine out of the wall of a car wash near Main Street in The Colony. After spotting a vehicle matching that description parked at a Taco Bell not far from the car wash, police entered the restaurant and arrested Amberson. They later discovered the coin machine and chain inside Amberson's Expedition. Evidence admitted at trial showed that the owner of the car wash, Paul Hamilton, had received over $12,000 in insurance proceeds to cover the required repairs, which totaled over $8,000.

---

[1]Because Amberson challenges only the amount of pecuniary loss—not the sufficiency of the evidence to support the remaining elements of his conviction for criminal mischief—we omit a detailed factual background and set forth the pertinent facts under each issue.

### III. Lesser-Included-Offense Instruction

In his first issue, Amberson argues that the trial court erred by denying his request for a jury instruction on the lesser-included offense of Class A misdemeanor criminal mischief.

### A. Standard of Review and Applicable Law

In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). We use a two-step analysis to determine whether an appellant was entitled to a lesser-included offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993).

First, the lesser offense must come within article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006); *Moore v. State,* 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). An offense is a lesser-included offense of another offense, under article 37.09(1), if the indictment for the greater-inclusive offense either (1) alleges all of the elements of the lesser-included offense or (2) alleges elements plus facts (including descriptive averments, such as nonstatutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced. *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g).

Second, some evidence must exist in the record that would permit a jury to

rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73. The evidence must be evaluated in the context of the entire record. *Moore*, 969 S.W.2d at 8. There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser-included offense. *Id.* The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536.

A person commits the offense of criminal mischief if, without the effective consent of the owner, he intentionally or knowingly damages or destroys the tangible property of the owner. Tex. Penal Code Ann. § 28.03(a)(1). If the property is damaged (as opposed to destroyed)[2] the amount of pecuniary loss is determined by "the cost of repairing or restoring the damaged property within a reasonable time after the damage occurred." *Holz v. State*, 320 S.W.3d 344, 345 (Tex. Crim. App. 2010) (quoting Texas Penal Code section 28.06(b) and setting forth how to calculate amount of pecuniary loss if property is damaged). The property owner's testimony regarding the payment from his insurance provider is sufficient to prove the cost of

---

[2]Although the jury charge allowed the jury to convict Amberson if it found that he "intentionally and knowingly damage[d] or destroy[ed] tangible property," we proceed solely under the theory of criminal mischief by damage.

4

repairs and, thereby, pecuniary loss. *Campbell v. State*, 426 S.W.3d 780, 785 (Tex. Crim. App. 2014).

The amount of pecuniary loss suffered by the owner determines the degree of the offense. *See* Tex. Penal Code Ann. § 28.03(b); *Holz*, 320 S.W.3d at 345. The offense is a Class-A misdemeanor if the amount of pecuniary loss is $750 or more but less than $2,500. Tex. Penal Code Ann. § 28.03(b)(3)(A). The offense is a state-jail felony if the amount of pecuniary loss is $2,500 or more but less than $30,000. *Id.* § 28.03(b)(4)(A).

**B. Analysis**

The State concedes, and we agree, that misdemeanor criminal mischief was a lesser-included offense of felony criminal mischief as alleged in the indictment. *See id.* § 28.03(b)(3), (4); *Holz*, 320 S.W.3d at 345, 347. Therefore, we focus our analysis on whether a rational jury could have found Amberson guilty only of misdemeanor criminal mischief.

Because the difference between misdemeanor criminal mischief and felony criminal mischief is solely the amount of pecuniary loss, we examine the record to see if there is any evidence to show that the pecuniary loss from the damage to the car wash from the forcible removal of the coin machine was $750 or more but less than $2,500. The record here contains no evidence from which a rational trier of fact could have concluded that the pecuniary loss, if any, could only have been in an amount of less than $2,500.

Hamilton testified without objection that he received a check from his insurance provider for "a little over $12,000" and was told to take care of the repairs himself. Amberson did not controvert Hamilton's testimony, but he argues that "there was only documentation of payment [i.e., cancelled checks] for a total of $2,096.06 in this case." While acknowledging that caselaw holds that the property owner's testimony is sufficient to prove pecuniary loss, *see Campbell*, 426 S.W.3d at 785 (holding that property owner's unobjected-to testimony regarding insurance payment was sufficient to prove cost of repairs), Amberson argues "that just means that Hamilton's testimony could provide the bare minimum level of proof required to prove that particular element" and that a juror may lawfully require more than the legal threshold of sufficient evidence to find guilt beyond a reasonable doubt. We agree that a reasonable juror could have required this. However, that is not the standard that we must apply.

It "is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011) (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997), *cert. denied*, 523 U.S. 1079 (1998)). "Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos v. State*, 382

6

S.W.3d 377, 385 (Tex. Crim. App. 2012). The fact that the jury might have disbelieved that the cost of repairs was $12,000 (as Hamilton testified he received in insurance proceeds), that the jury might have disbelieved that the cost of repairs was more than $7,500 (as shown by the invoices), or that the jury might have believed that the cost of repairs was less than $2,500 (as evidenced through cancelled checks) is not *affirmative evidence* that the total cost of repairs was limited to only the sum of the cancelled checks. *Cf. Coalwell v. State*, No. 04-16-00358-CR, 2017 WL 4014707, at *5 (Tex. App.—San Antonio Sept. 13, 2017, no pet.) (mem. op., not designated for publication) (concluding that facts in stalking case did not raise lesser-included offense of harassment because although the jury might have believed that only a single incident of harassment occurred, that was not affirmative evidence that the harassing emails were sent not on multiple dates, but on only one date).

Because there is no affirmative evidence allowing a rational factfinder to find that if Amberson was guilty, he was guilty only of criminal mischief of $750 or more but less than $2,500, the trial court did not err by refusing to give an instruction on the lesser-included offense of Class-A misdemeanor criminal mischief. *See Rousseau*, 855 S.W.2d at 675 (holding that appellant was not entitled to a charge on the lesser-included offense because there was no evidence that if appellant was guilty, he was guilty only of the lesser-included offense); *cf. Benefield v. State*, 389 S.W.3d 564, 574–77 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (holding that no evidence in the record permitted a jury to rationally find that if appellant was guilty, she was guilty

only of the lesser-included offense of misdemeanor misapplication of fiduciary property valued at less than $1,500).  We therefore overrule Amberson's first issue.

### IV.  Evidentiary Challenges

In his second issue, Amberson argues that the trial court reversibly erred by admitting State's Exhibits 21, 22, 23, 24, 25, 26, and 27—copies of documents showing amounts spent on repairs to the car wash—over his hearsay objections.  In his third issue, Amberson argues that the trial court reversibly erred by admitting State's Exhibits 28, 29, and 30—copies of cancelled checks for repairs to the car wash—over his best-evidence objection.

### A.  Standard of Review

We review a trial court's evidentiary rulings under an abuse-of-discretion standard.  *See Jenkins v. State*, 493 S.W.3d 583, 607 (Tex. Crim. App. 2016).  A trial judge's decision is an abuse of discretion only when it falls outside the zone of reasonable disagreement.  *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).  An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case.  *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1024 (2006).

### B.  Applicable Law

Hearsay is an out-of-court statement that a party offers to prove the truth of the matter asserted within the statement.  Tex. R. Evid. 801(d).  Hearsay is generally

inadmissible unless it falls within one of the enumerated exceptions. *See generally* Tex. R. Evid. 802–804 (defining inadmissible hearsay and its exceptions).

Under the exception found in Texas Rule of Evidence 803(6), records of regularly-conducted activity, more commonly known as business records, may be admitted if the records were made at or near the time of the event, they were recorded by someone with knowledge, and it was common practice to keep such a record in the course of regularly conducted business. Tex. R. Evid. 803(6). This information is established through the testimony of the custodian of the business record or other qualified witnesses or through a business-records affidavit that complies with rule 902(10). Tex. R. Evid. 803(6)(D), 902(10).

Under the best-evidence rule, to prove the contents of a writing, a party is required to tender the original. Tex. R. Evid. 1002. However, a photocopy of an original is admissible to the same extent as the original unless its authenticity is questioned or its admission would be unfair. Tex. R. Evid. 1001(d), 1003.

Error in the admission of evidence is generally considered nonconstitutional error to which we apply rule 44.2(b), and we disregard the error if it did not affect the appellant's substantial rights. Tex. R. App. P. 44.2(b); *see Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). We will not intervene if after examining the whole record, including the character of the alleged error and how it

9

might be considered in connection with other evidence in the case, there is a fair assurance that the error did not influence the jury or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting *Solomon*, 49 S.W.3d at 365).

## C. Relevant Portions of the Record

Both the State and Amberson questioned Hamilton outside the presence of the jury regarding State's Exhibits 21 through 30. With regard to State's Exhibits 21 through 27—invoices and receipts (collectively, invoices) related to the repairs made to the car wash, most of which contained handwritten notations regarding the date and check number that Hamilton used to pay the invoices—Amberson questioned Hamilton about whether he knew how the invoices were generated, whether he knew what information was used to generate the invoices, and whether he knew the policies or procedures that were in place to create the invoices. Hamilton answered that he had no personal knowledge of how the invoices were generated. Amberson made a hearsay objection to State's Exhibits 21 through 27, arguing that the State did not prove that Hamilton was the custodian of records for each of the documents. Amberson explained, "[Hamilton] cannot testify that these entries were made at or near the time by someone with personal knowledge. As he himself is not a part of those companies. And so there is not an authentication[,] . . . [and] the business records exception has not been met." The trial court overruled Amberson's objection.

10

State's Exhibits 28 through 30 reflect copies of three cancelled checks for payments Hamilton made for some of the repairs to the car wash. Amberson objected based on the best-evidence rule and argued, "I realize these are self-authenticated commercial paper; however, that requires the original at that point in time, which we do not have." The trial court overruled Amberson's objection.

## D. Analysis

### 1. State's Exhibits 28 through 30

With regard to State's Exhibits 28 through 30, the copies of the cancelled checks constitute duplicates and were therefore admissible, unless their authenticity was challenged.[3] *See* Tex. R. Evid. 1003. Amberson's sole argument is that "[i]n lodging a 'best evidence' objection, [he] raised a question as to the authenticity of the original checks and alerted the trial court that it would be unfair to admit the duplicates in lieu of the originals." Amberson relies on the following statement from *Menefee v. State*: "An objection that evidence is not the 'best evidence' asserts that a copy or reproduction of a writing, recording, or photograph is inadequate and should be replaced by the original." 928 S.W.2d 274, 278 (Tex. App.—Tyler 1996, no pet.). In *Menefee*, the appellant "objected to the admission of certified copies of prior judgments because the certified copies were not the 'best evidence' of the judgments."

---

[3]As noted by the trial court when it ruled on the admissibility of the cancelled checks, "given the business practices of banks today, I would guess this is as good as it gets for an original check."

*Id.* But the *Menefee* court summarily held, "This objection is without merit." *Id.* We reach the same conclusion. Because rule 1003 specifically allows for duplicates to be admitted in the absence of an authenticity challenge,[4] we hold that the trial court did not err by overruling Amberson's best evidence objection to State's Exhibits 28 through 30. *See* Tex. R. Evid. 1003. We overrule Amberson's third issue.

**2. State's Exhibits 21 through 27**

As set forth above, the trial court treated State's Exhibits 21 through 27 as Hamilton's business records. With regard to the custodial requirement inherent in the business-records exception to the hearsay rule, rule 803(6) does not require that the person authenticating the record be either the creator of the record or have personal knowledge of the information recorded therein. *See Desselles v. State*, 934 S.W.2d 874, 876 (Tex. App.—Waco 1996, no pet.); *Brooks v. State*, 901 S.W.2d 742, 746 (Tex. App.—Fort Worth 1995, pet. ref'd). Rather, the testifying witness need only have knowledge of how the record was prepared. *Desselles*, 934 S.W.2d at 876; *Brooks*, 901 S.W.2d at 746. Hamilton disclaimed any personal knowledge of how the invoices were created. As a result, the State did not establish that the invoices reflected in State's Exhibits 21 through 27 were made in the ordinary course of business, that they were made at or near the time of the events they recorded, and that they were made

---

[4]Amberson did not challenge the authenticity of the copies of the cancelled checks in the trial court, but he instead specifically stated that the copies of the cancelled checks were self-authenticated.

by a person with knowledge who was acting in the regular course of business. *See* Tex. R. Evid. 803(6); *Johnson v. State*, No. 12-10-00277-CR, 2011 WL 3328687, at *3 (Tex. App.—Tyler July 13, 2011, pet. ref'd) (mem. op., not designated for publication) (holding that trial court erred by admitting into evidence records for which sponsoring witness was not the custodian). Because Hamilton was unable to prove up the requirements for the invoices to constitute business records under rule 803(6), we hold that the trial court erred by admitting State's Exhibits 21 through 27 and therefore proceed to a harm analysis.

Here, the error does not rise to the level of reversible error. Based on the record before us, the challenged evidence could have had no more than a slight effect on the jury's decision. The jury had before it Hamilton's unobjected-to testimony that he had received a little over $12,000 from his insurance provider to cover the damage. *See Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (noting that any error with respect to admission of complained-of evidence was harmless in light of "very similar evidence" admitted without objection), *cert. denied*, 562 U.S. 1142 (2011); *McNac v. State*, 215 S.W.3d 420, 424–25 (Tex. Crim. App. 2007) (in harm analysis, concluding that the "unchallenged evidence [was] essentially cumulative" of the challenged evidence). Hamilton also testified without objection about each of the invoices and the canceled checks. *See Estrada*, 313 S.W.3d at 302 n.29; *McNac*, 215 S.W.3d at 424–25.

The jury also had before it multiple photographs showing the damage to the car wash, including the gaping hole in the brick wall where the coin machine had been located before it was forcibly removed. The State thus did not have great need for this particular evidence because it otherwise had presented sufficient evidence to establish the pecuniary loss attributable to the criminal mischief. Based on our review of the record, any error the trial court might have theoretically committed by admitting State's Exhibits 21 through 30 did not have a substantial and injurious effect on the jury's determination of Amberson's guilt. *See* Tex. R. App. P. 44.2(b); *Greenwood v. State*, 948 S.W.2d 542, 552–53 (Tex. App.—Fort Worth 1997, no pet.) (holding that admission of document, which did not have proper business records predicate established, was harmless because witness testified without objection to the same fact contained in the document). We overrule Amberson's second issue.

## V. Closing Argument

In his fourth issue, Amberson argues that the trial court abused its discretion and denied him his right to counsel by sustaining the State's objection to his closing argument:

> And Mr. Hamilton testified a couple of times that he wasn't allowed to do the electrical work because he wasn't permitted. And that on commercial businesses, you have to be permitted. And yet he also did some of the electrical work himself. So what is it? He also said the electrical work, the conduit and stuff had to be replaced.
>
> Mr. Mueller said all of this is original. None of that is new. None of that was purchased recently. That's all original.

14

[PROSECUTOR]:  Objection, facts not in evidence.

THE COURT:  Sustained.

## A. Standard of Review and Applicable Law

We review a trial court's ruling on an improper-jury-argument objection by the State for an abuse of discretion.  *See Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010), *cert. denied*, 565 U.S. 830 (2011).  Permissible jury argument falls into four distinct categories:  (1) summary of the evidence; (2) reasonable deductions from the evidence; (3) response to opposing counsel's argument; or (4) a plea for law enforcement.  *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008), *cert. denied*, 556 U.S. 1211 (2009).  An appellant is allowed to argue reasonable, good-faith deductions from the evidence.  *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App.), *cert. denied*, 531 U.S. 850 (2000); *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App.), *cert. denied*, 522 U.S. 994 (1997).  This includes the appellant's opinion about what the evidence shows as long as the opinion is based on the record evidence and does not constitute sworn testimony.  *See McKay v. State*, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985), *cert. denied*, 479 U.S. 871 (1986).  Improper denial of jury argument may constitute denial of the right to counsel if the argument is one the appellant is entitled to make.  *Davis*, 329 S.W.3d at 825.

Denial of the right to counsel is an error of constitutional magnitude.  *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10; *see also Lemos v. State*, 130 S.W.3d 888, 892–93 (Tex. App.—El Paso 2004, no pet.) ("A criminal defendant's constitutional rights

15

to counsel and to a jury trial encompass a right to have his theory of the case argued vigorously to the jury."). When an error is of constitutional magnitude, we must evaluate harm under rule 44.2(a), which requires us to reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction. *See* Tex. R. App. P. 44.2(a).

## B. Relevant Testimony

During defense counsel's cross-examination of Paul Mueller, who leased the car wash from Hamilton, she asked him to identify Defendant's Exhibit 1, which was a photograph of Mueller standing next to the interior of the wall that was replaced at the car wash. The trial court admitted Defendant's Exhibit 1, and defense counsel asked Mueller about the wiring depicted in the picture:

> Q. (By [Defense Counsel]) I'm going to circle all of the conduit here. All of the conduit that is in this picture is the original conduit -- or in the circle, excuse me -- is the original conduit that was in that room prior to the damage; is that correct?
>
> A. Correct.
>
> Q. And this electrical box is the same electrical box that was there prior to the damage; is that correct?
>
> A. Yes.
>
> Q. And as well as the one next to it, correct?
>
> A. Yes.

Prior to Mueller's testimony, Hamilton had testified on direct that electrical repairs were performed after the coin machine was forcibly removed from the car

16

wash. The State showed Hamilton State's Exhibit 3, which depicted the exterior of the same wall that was depicted in Defendant's Exhibit 1. Hamilton testified that the exterior wall contained the electric meter box but that the interior contained the breaker boxes and additional wiring. When the State asked Hamilton, "So quite a bit of electrical work on this wall, in addition to the masonry work?" Hamilton answered, "Yes." Later during Hamilton's testimony, the State showed Hamilton State's Exhibit 32, which depicted the exterior of the damaged wall after it was repaired, and asked, "Is that a new meter box that I'm pointing to?" Hamilton responded, "Yes. The actual other meter box was bent up pretty bad."

On cross-examination, defense counsel questioned Hamilton about the electrical repairs:

Q. And that all of the electrical conduit had to be replaced and repaired?

A. On the inside. Most of it -- some of it had to be replaced. Most of it had to be repaired and replaced. All of the conduit on the outside was replaced.

Q. Okay. And you said the electrical box had to be replaced, correct?

A. Define electrical box.

Q. We have the outside box?

A. The meter.

Q. Which is the meter, correct?

A. Yes.

17

Q.  And then there was additional electrical work that had to be done for the conduit and everything that was on the backside of the wall?

A.  Yes.

## C.  Analysis

Amberson argues that "everything to which the State objected was proper either as a summation of the evidence or a reasonable deduction from the evidence[.]" Amberson further argues that "the trial court abused its discretion when it sustained the State's objection and violated [his] right to counsel by preventing his counsel from making an argument she was entitled to make."

Assuming without deciding that the trial court abused its discretion by sustaining the State's objection, we must determine whether the error was harmful. Amberson argues that this court "should have a reasonable doubt about whether the error contributed to [his] conviction" because "[t]he objected-to argument was part and parcel to [his] broader argument that the State had not met its burden of proof on the pecuniary-loss element." Defense counsel argued during closing without objection that

> [the State] chose to charge him with this crime.  Where is their proof?
>
> And value, cost to repair, heck, the owner made three grand on this case.  Insurance gave him twelve grand, and he spent nine.  Where is the cost?  You saw receipts, but you've not heard from a single person that did the work in this case.  You did not hear from the electrical person.  You did not hear from the brick mason that repaired the walls. You have not heard from anybody that actually did the work in this case.

And the only evidence of payment that you've seen is two checks. One for $1,900, which doesn't match the receipt that he received. He actually modified that himself and made it $1,900 versus $1,500 that was originally on that receipt. And one for $196. There is a check for $400, but as you've heard, that's not part of the pecuniary loss in this case. So where is the value? The State has to prove that beyond a reasonable doubt to you.

From our review of defense counsel's entire closing argument, we conclude that she was allowed to make, and did make, the argument that the State had not proved the pecuniary-loss element of felony criminal mischief—that the pecuniary loss was more than $2,500 but less than $30,000—but the jury disagreed. As we held above, Hamilton's unobjected-to testimony regarding the insurance proceeds he received was sufficient to prove the pecuniary-loss element of felony criminal mischief. *See Campbell*, 426 S.W.3d at 785. Moreover, even excluding the $4,750 paid to electricians, the total cost of the bricks, the masonry work, and the welding was more than $2,500. We therefore conclude that any possible error in sustaining the State's objection to defense counsel's closing argument was harmless beyond a reasonable doubt and did not contribute to Amberson's conviction. *See* Tex. R. App. P. 44.2(a); *McGee v. State*, No. 05-12-01074-CR, 2014 WL 261060, at *9 (Tex. App.—Dallas Jan. 23, 2014, pet. ref'd) (mem. op., not designated for publication) (holding harmless any error in sustaining State's objection to closing argument because appellant was allowed to make desired argument without objection at another point during closing). We overrule Amberson's fourth issue.

19

## VI. Conclusion

Having overruled Amberson's four issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  November 15, 2018