IN THE
TENTH COURT OF APPEALS
No. 10-09-00031-CR


ALEJANDRO ABAD RAMOS,

                                                            Appellant

 v.


THE STATE OF TEXAS,

                                                            Appellee

_____

From the 40th District Court
Ellis County, Texas
Trial Court No. 33049CR

## MEMORANDUM  OPINION

A jury found Appellant Alejandro Abad Ramos guilty of the offense of continuous sexual abuse of a young child and assessed his punishment at life imprisonment.  Ramos appeals, contending that (1) the trial court erred by admitting hearsay evidence and (2) the evidence was insufficient to support his conviction.  We will affirm.

We begin by addressing Ramos's second issue.  Ramos states that the "proper procedure" for reviewing a sufficiency complaint "is for the appellate court to accept

the inculpatory circumstances, and then to ask if there is a reasonable hypothesis other than guilt which would also account for such circumstances." However, this "outstanding reasonable hypothesis" construct has long been discarded as the appellate standard of review. *See Geesa v. State*, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000); *Desselles v. State*, 934 S.W.2d 874, 877-78 (Tex. App.—Waco 1996, no pet.). Furthermore, the court of criminal appeals recently held that there is "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis* factual-sufficiency standard" and that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary, including *Clewis*, are overruled." *Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010). Accordingly, we will apply the *Jackson v. Virginia* legal-sufficiency standard to Ramos's sufficiency complaint.

Pursuant to *Jackson v. Virginia*, when reviewing a challenge to the sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State*, 828 S.W.2d

418, 422 (Tex. Crim. App. 1992). In doing so, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

> A person commits the offense of continuous sexual abuse of a young child if:
>
> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and
>
> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

TEX. PEN. CODE ANN. § 21.02(b) (Vernon Supp. 2010). Here, K.R. testified that from the beginning of 2004 to June 2007, she lived in Florida with Ramos, whom she married in March 2006, and with her three children from a previous marriage, sons S.F. and G.F. and daughter K.F. Because of financial difficulties, she and her three children moved back to Ennis, Texas, in June 2007. Ramos stayed in Florida for several more months but then also moved to Ennis around the end of September or beginning of October 2007.

The whole family lived in one room at K.R.'s mother's house in Ennis. The house was big, and the room had a separate entrance. K.R. and Ramos slept on a bed, and the children slept on a sofa bed. K.R. regularly worked from 11 a.m. to 8 p.m. four days out of the week and every Saturday. During the week, the children would come home at about 4 p.m. When K.R. was not home, K.R.'s mother would take care of the children, or, when Ramos was home, he would take care of the children. Ramos was without work for a few weeks when he first returned to Texas but then began working again.

He had an unpredictable schedule, but he always worked in Texas. Then, in February 2008, Ramos began working out of state. He would be gone for varying amounts of time.

K.R. was at home with the children on Monday evening, March 31, 2008, and Ramos had been gone to Colorado for about a week. S.F. and K.F. were arguing, and K.R. heard S.F. call seven-year-old K.F. "nasty." K.R. asked S.F. why he was saying that to his younger sister. K.F. eventually told K.R. that "daddy's been doing nasty stuff to me." K.F. referred to Ramos, her stepfather, as "daddy." K.R. then asked K.F. what kind of "nasty stuff," and K.F. told her that Ramos had been sexually assaulting her.

K.R. took K.F. to Ennis Regional Medical Center. At the hospital, K.R. asked K.F. how long this had been going on, and K.F. replied that it had been going on since they lived in Florida. At some point, K.R. also asked K.F. how many times this had happened to her, and K.F. said that it had happened "a lot of times." That included the time that she was in Texas. The emergency room physician testified that he only performed a basic exam instead of a detailed exam of K.F. because K.F.'s mother stated that she was last assaulted ten days prior to the visit. After seventy-two hours, a detailed exam generally does not show any evidence. The physician stated that when a detailed exam is not done, he bases his clinical impressions on how a child acts in the emergency room. Based upon his time with K.F., her acts and behaviors were consistent with alleged sexual assault.

The forensic interviewer at the Ellis County Children's Advocacy Center testified that she conducted a forensic interview with K.F. on April 2, 2008. During the

interview, K.F. said that Ramos had been sexually assaulting her and that it happened "lots of times." K.F. said to the interviewer that the first time it happened was in Florida when she was five years old and that the last time that it had happened was the Monday a week prior to the interview. During the interview, K.F. stated specifically that it had been happening in the room that the family shared together. K.F. indicated to the interviewer that it had been happening on a consistent and continual basis in Ellis County, Texas.

K.F. testified. She stated that Ramos began sexually assaulting her in Florida when she was four years old and that it stopped when she was seven years old. She thought that, in all, it happened more than forty times but less than fifty times. She testified that it happened at least ten times in Texas and that it happened about every week when her mom was at work.

Ramos attempted to show that he had been out of state for much of the time after he moved to Texas. Ramos's mother testified that Ramos moved to Texas in October 2007, just before the Day of the Dead, which is at the beginning of November, and that he was away from Texas working during December of 2007 and January, February, and March of 2008. Ramos's employer testified that Ramos was working out of state with him from late January through April 2, but that he had returned home once for about a week during that time. A co-worker of Ramos's testified that they left to go out of state around the middle or end of January and came back in April and that Ramos had never come back to Texas during that time. However, we must defer to the jury's determination of the weight to be given to contradictory testimonial evidence because

resolution of the conflict is often determined by the jurors' evaluation of the witnesses' credibility and demeanor. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see also Brooks*, 323 S.W.3d at 912 ("[D]irect-appeal courts should review a jury's verdict under deferential standards.").

Viewing all the evidence in the light most favorable to the verdict, the evidence is sufficient to support Ramos's conviction. We overrule Ramos's second issue.

In his first issue, Ramos contends that the trial court erred by admitting hearsay evidence. Specifically, he complains that the trial court erred in overruling his hearsay objection to K.R.'s testimony about what her sons had told her:

> Q. Did you ever talk to your sons about anything they may have seen or heard?
>
> A. After it happened?
>
> Q. Uh-huh.
>
> A. Well, yes, they -- they told me that they would see -- that they didn't see, but that he would tell them to go outside and stay in the room with her. And he would lock the doors or he would tell her to get in bed with him when the kids were in the other bed when I would leave to work.
>
> [Defense Counsel]: I'm going to object to this as hearsay, Judge.
>
> THE COURT: Overruled.
>
> A. And that -- well, they would just see where he would pick up the covers and she would be under the covers with him. I don't know that.
>
> THE COURT: Let me go back to his objection. Are the children going to testify?
>
> [Prosecutor]: Yes.

THE COURT:      All right.  Go ahead.

Ramos also complains that the trial court erred in overruling his hearsay objection to K.R.'s testimony regarding what he said to her when she visited him in jail:

Q.      Okay.  About how many times do you think you've seen your ex-husband at the jail?

A.      Maybe ten.

Q.      About ten times?  And what were your conversations with him about?

A.      At the beginning I was telling him to sign the divorce.  Very first time I went, I was very upset and I was taking all my anger.  I was asking him why would he do something like that.

Q.      And what would he say to you?

[Defense Counsel]:      Objection hearsay.

THE COURT:      Overruled.

A.      Well, at the very first conversation, he wouldn't say nothing.  He would just nod his head.  I was just like don't -- I was just talking and yelling at him and he was just nodding his head.  He wouldn't say nothing.

Q.      So he never -- in those initial conversations right after he got arrested, he never said, oh, my God, she's making this up.  Why is she making this up on me or why did she pin this on me?  None of those conversations?

A.      The very first one.  On the second -- the other conversations, he would say that he didn't do it.  That I had to believe him.  That he was innocent.

Q.      Did he ever say that [K.F.] was making it up?

A.      No.  He just said it wasn't true.

Q. He just said he didn't do it?

A. Yeah. Correct.

We review the trial court's decision to admit evidence under an abuse of discretion standard. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). We will reverse the trial court's decision only if it is outside the zone of reasonable disagreement. *Id.*

First, the trial court did not abuse its discretion in overruling Ramos's objection to K.R.'s testimony about what he said to her when she visited him in jail because a statement by a party that is offered against the party is not hearsay. *See* TEX. R. EVID. 801(e)(2). Second, under Rule 44.2(b), a non-constitutional error "that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). "[S]ubstantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001), and *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

In this case, both of K.R.'s sons testified at trial to the same thing that K.R. testified that they had told her. *See King v. State*, 953 S.W.2d 266, 273 (Tex. Crim. App. 1997) (stating that potential harm of improperly admitted evidence can be "defused" by properly admitted evidence). Therefore, any error in the admission of K.R.'s testimony about what her sons had told her is harmless. *See* TEX. R. APP. P. 44.2(b). We overrule Ramos's first issue.

Having overruled both of Ramos's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Reyna, and
        Justice Davis
Affirmed
Opinion delivered and filed December 29, 2010
Do not publish
[CRPM]

*(Chief Justice Gray concurs in the judgment of this Court to the extent that it affirms the trial court's judgment.  A separate opinion will not issue.)