NO.
12-10-00277-CR

                        

IN THE COURT OF
APPEALS 

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

BEN
LEE JOHNSON, JR.                                §                 APPEAL FROM
THE EIGHTH

APPELLANT

 

V.                                                                         §                 JUDICIAL
DISTRICT COURT

 

THE
STATE OF TEXAS,

APPELLEE                                                        §                 RAINS
COUNTY, TEXAS

                                                        
                                           

MEMORANDUM OPINION

Ben
Lee Johnson, Jr., appeals his conviction for theft.  In one issue, Appellant
argues that the trial court erred in allowing the State to offer two documents
into evidence.  We affirm.

 

Background

Appellant
was indicted for stealing cattle from a livestock barn.  The essential facts
were not in dispute.  Appellant purchased cattle on November 3 and November 6,
2007, from Emory Livestock (Emory), a cattle auction business.  On November 7,
2007, Appellant wrote a check to Emory for $35,879.83.  The check was to cover
the purchases he had made earlier that week.  Emory attempted to cash the check
on several occasions, but the bank did not honor the check because Appellant’s
account was overdrawn.

After
attempting to collect on the check on its own, Emory turned to the district attorney
to attempt to get payment.  A grand jury indicted Appellant for the felony
offense of theft in June 2008.  Appellant made two payments to Emory, one in
the amount of $4,876.45 and one in the amount of $2,500.00. Additionally,
although the evidence is not clear on this issue, Emory was able to recoup some
of its losses by holding back payment from transactions in which Appellant was
the seller.  The case proceeded to trial in May 2010.  Appellant pleaded not
guilty.

At
his trial, the State offered a complaint and a default judgment from a United
States Department of Agriculture administrative proceeding.  That proceeding
was against Appellant.  In the complaint, the Department alleged that he did
not make payment on six livestock transactions.  Appellant apparently did not
answer or appear in response to the complaint, and a default judgment was
entered against him.  In the default judgment, the administrative law judge
found that he had issued insufficient funds checks for six transactions
totaling $127,674.66 and suspended him from operations subject to the Packers
and Stockyards Act for six years.

Appellant
objected to the documents on the grounds that they were hearsay.  The complaint
and judgment were not certified.  The State argued that they were admissible as
business records, even though the sponsoring witness, a local agent with the
Department of Agriculture, did not maintain the documents in his office and was
not a custodian of these specific records.  The trial court allowed the
documents over Appellant’s objection.  The jury found Appellant guilty as
charged.  The judge assessed a sentence of imprisonment for ten years.  This
appeal followed.

 

Admission of Records

            In
one issue, Appellant argues that the trial court erred in overruling his hearsay
objection to the admission of a complaint and a default judgment from an
administrative proceeding.

Applicable
Law

We
review a trial court’s decision to admit evidence over a hearsay objection for
an abuse of discretion.  See Casey v. State, 215 S.W.3d
870, 879 (Tex. Crim. App. 2007); Willover v. State, 70 S.W.3d
841, 845 (Tex. Crim. App. 2002).  We will not disturb the evidentiary ruling of
the trial court unless it falls outside the zone of reasonable disagreement.  See
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)
(op. on reh’g).  The rules of evidence forbid hearsay statements.  See Tex. R. Evid. 801(d).  By rule, hearsay
is “a statement, other than one made by the declarant while testifying at the
trial or hearing, offered in evidence to prove the truth of the matter
asserted.”  Id.

Public
records, subject to several exceptions, are admissible as an exception to the
hearsay rule.  See Tex. R. Evid.
803(8).  Domestic public documents are self-authenticating if they are under
seal.  See Tex. R. Evid.
902(1).  Copies of certified public records are self-authenticating if they are
certified correct by the custodian or person authorized to make a
certification.  See Tex. R. Evid.
902(4).  

Records
of regularly conducted activity are admissible as an exception to the hearsay
rule.  See Tex. R. Evid.
803(6).  Often called a business records exception, these kinds of records are
admissible if they meet four foundational requirements: (1) the records were
made and kept in the course of a regularly conducted business activity, (2) it
was the regular practice of the business activity to make the records, (3) the
records were made at or near the time of the event that they record, and (4)
the records were made by a person with knowledge who was acting in the regular
course of business.  See id.; Powell v. Vavro, McDonald,
& Assocs., 136 S.W.3d 762, 765 (Tex. App.–Dallas 2004, no pet.). 

Analysis

The
documents offered by the State were court records.  However, the documents did
not bear a seal and were not certified.  The State does not argue that they are
admissible as public records.  Instead, the State argued in the trial court,
and argues on appeal, that the documents were admissible as records of
regularly recorded activity.  Appellant argued at trial that the documents were
irrelevant and that they were hearsay because the State had not laid a proper
foundation for their admission.  Appellant does not argue that the documents
contain additional hearsay[1] and did not renew his relevancy
argument on appeal.

The
sponsoring witness for the documents was Philip Warren, a resident agent with
the USDA Packers and Stockyards Program.  He testified that he was a custodian
of records for that program.  He also testified that the exhibits were true and
accurate copies of the originals.  The originals are kept in Washington D.C. 
He testified further that they appear to have been made by someone who would
“have had knowledge of that.”  However, Warren also testified that he was not a
custodian of records in Washington D.C., he had no personal knowledge of the
authenticity of the records, he did not maintain these particular records, and
these records were not maintained in his office.  The State sought to clarify
his position with respect to the records with the following questions:

 

Q:            And
again, Mr. Warren, do you have any records in your office?

 

A:            Yes,
I do.

 

Q:            And
those records are records of persons like the Defendant here; correct?

 

A:            Yes,
sir.

 

Q:            And
they are records that are ordinarily kept in the normal course of the Packers
and                       Stockyards Program; right?

 

A:            Yes,
sir.

 

Q:            So,
in fact, you really are a custodian of records if you have records in your
possession at               your office; correct?

 

A:            Yes,
I am.

 

Q:            And
I’m not asking you did you have this record in your office.  I’m just asking
you, are                you actually a custodian of records for the Packers and
Stockyards Program?

 

A:            Yes,
sir.

 

 

 

Appellant
renewed his objection, stating that Warren could not testify as to the
“authenticity of this particular record.”  The State asked further questions,
including asking if it “appear[ed] to be a document that was prepared by
someone within the USDA.”  The State also asked if the records bore a stamp and
if the same cause number was on both documents.  Warren answered in the
affirmative to each question.

Appellant’s
objection was a proper one.  While Warren was custodian of some records, he was
not, by his own admission, a custodian of this record.  He did not testify that
it was made at the time or near the time of the event it recorded. 
Importantly, there was no evidence as to where this particular document
originated, and Warren testified that he had no personal knowledge as to its
authenticity.  Warren testified that it was like other documents, but he was
unable to testify that he maintained these particular documents.

Rule
803(6) does not require that the person authenticating the record be either the
creator of the record or have personal knowledge of the information recorded
therein.  See Desselles v. State, 934 S.W.2d 874, 876 (Tex.
App.–Waco 1996, no pet.); Brooks v. State, 901 S.W.2d 742, 746
(Tex. App.–Fort Worth 1995, pet. ref'd).  Rather, the testifying witness need
only have knowledge of how the record was prepared.  Desselles,
934 S.W.2d at 876.  Warren likely did have knowledge as to how the records were
prepared.  In fact, he later testified that he had served the order on
Appellant on two occasions.  But before admission of the document, Warren never
testified as to how these specific records were prepared or where they were
maintained.  He disclaimed any personal knowledge of the authenticity of the
records.  His testimony, in sum, was that he did not maintain the documents,
the documents looked like official documents, the complaint appeared to have
been signed by his supervisor, and the two documents bore the same cause
number.  This does not establish that these particular records were made in the
ordinary course of business, that they were made at or near the time of the
event they record, and that they were made by a person with knowledge who was
acting in the regular course of business.  See Tex. R. Evid. 803(6).  Finally, and perhaps most importantly,
Warren could not vouch for the authenticity of the documents.  Because the
foundational requirements were not met to establish that these documents were
records of regularly conducted activity, the trial court erred in allowing them
into evidence.  

Error
in the admission of evidence is nonconstitutional error.  See Johnson v.
State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  Nonconstitutional
error that does not affect the substantial rights of the defendant must be
disregarded.  See Tex. R. App. P.
44.2(b).  Therefore, error in the admission of hearsay evidence does not
warrant reversal unless it had a substantial and injurious effect or influence
in determining the jury’s verdict.  See King v. State, 953 S.W.2d
266, 271 (Tex. Crim. App. 1997). 

After
considering all of the evidence, we hold that this error did not have a
substantial or injurious effect or influence on the jury’s verdict.  A lawyer
would know that a complaint in a civil proceeding proves no facts, other than
the fact that it was filed.  And without more information about how a default
judgment is rendered in the U.S. Department of Agriculture administrative law
proceedings, a lawyer would know that the default judgment is essentially a
rendition of the facts in the complaint.  There may be some relevance insofar
as Appellant did not contest the complaint, but without more, it is difficult
to say that the facts asserted therein, that Appellant had written several bad
checks, were actually established by these documents.  

Appellant
makes an important point, however.  Specifically, he argues that it is doubtful
that the jury understood the distinction between “the present criminal action
and the federal proceeding in Washington D.C.”  This assertion is accurate as
far as it goes, but Warren did testify as to several important facts. 
Specifically, he stated that the action was civil and that there were no
criminal allegations at the federal level.  He also conceded that there was no
evidence that Appellant knew of the hearing or had counsel present for the
hearing and that federal investigations did not look at the intent of a check
writer.

Additionally,
there was copious evidence admitted, without objection, as to Appellant’s
writing of bad checks.  Specifically, his bank records were admitted. 
Appellant’s October 2007 statement showed that he deposited more than $1.6
million and withdrew or wrote checks for just a little less than that amount. 
Nevertheless, he had about $1,275.00 in insufficient “paid item” and “returned
item” fees.  On his November statement, more than $2.2 million was deposited
and slightly less was withdrawn. As with the previous month, the account was
often overdrawn.  Three times the account was overdrawn by more than
$100,000.00, and he was charged more than $1,000.00 in insufficient fund fees. 
The December 2007 statement shows that more than $400,000.00 was deposited and
checks of slightly more were presented.  The account was regularly overdrawn,
and he was charged almost $1,000.00 in insufficient fund fees.  

Additionally,
the State presented evidence that Appellant had written two checks to another
auction business that were not honored.  One check was in the amount of
$59,533.55, and the other was for $126,312.91.  Finally, a banker testified
that Appellant defaulted on a loan and that the bank had to foreclose on 130
head of cattle.  The bank attempted to foreclose on “thirteen, fourteen
hundred” head of cattle, but the banker testified that they could not be
located.

Appellant’s
defense was that he did not have the intent to steal the cattle, and that
business difficulties, not an intent to deprive, were behind his failure to
make good on the checks that were presented.  In addition, Appellant’s attorney
suggested, although there was scant evidence of this, that the bank had reneged
on an agreement to cover the checks.  

In
light of the copious evidence that Appellant regularly overdrew his account in
a significant way, the inadmissible evidence that he had written six checks
that were not honored, two of which were the basis of the charge and were proved
with direct evidence, did not play a substantial and injurious role in the
jury’s deliberations.[2]  This is especially so because
of the testimony that the federal proceeding was based only on the nonpayment
of an auction bill and did not include any consideration of intent.

If
this evidence had not been admitted, the jury would still know that Appellant
wrote checks for tens of thousands of dollars on many occasions when his
account was overdrawn.  The inadmissible evidence was simply more of the same,
and we hold that its admission did not affect Appellant’s substantial rights. 
We overrule Appellant’s sole issue.

 

Disposition

            Having
overruled Appellant’s sole issue, we affirm the judgment of the
trial court.

 

  
 SAM GRIFFITH   

  
Justice

 

 

Opinion delivered July 13, 2011.

Panel consisted
of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)


 
 
 
 
 
 
 
  
 
 
 
 
 
  
 




 









[1]
See, e.g., Crane v. State, 786 S.W.2d 338,
353-54 n.5 (Tex. Crim. App. 1990) (otherwise admissible business record may
contain inadmissible hearsay). 





[2] The fact that
Appellant had been suspended from the livestock business was introduced
elsewhere in the trial without objection, so Appellant was not harmed by the
inclusion of that information in the challenged documents.  See Coble v.
State, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010).