# NO. 12-10-00277-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BEN LEE JOHNSON, JR.* <br> *APPELLANT* | § | *APPEAL FROM THE EIGHTH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* <br> *APPELLEE* | § | *RAINS COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Ben Lee Johnson, Jr., appeals his conviction for theft. In one issue, Appellant argues that the trial court erred in allowing the State to offer two documents into evidence. We affirm.

### BACKGROUND

Appellant was indicted for stealing cattle from a livestock barn. The essential facts were not in dispute. Appellant purchased cattle on November 3 and November 6, 2007, from Emory Livestock (Emory), a cattle auction business. On November 7, 2007, Appellant wrote a check to Emory for $35,879.83. The check was to cover the purchases he had made earlier that week. Emory attempted to cash the check on several occasions, but the bank did not honor the check because Appellant's account was overdrawn.

After attempting to collect on the check on its own, Emory turned to the district attorney to attempt to get payment. A grand jury indicted Appellant for the felony offense of theft in June 2008. Appellant made two payments to Emory, one in the amount of $4,876.45 and one in the amount of $2,500.00. Additionally, although the evidence is not clear on this issue, Emory was able to recoup some of its losses by holding back payment from transactions in which Appellant was the seller. The case proceeded to trial in May 2010. Appellant pleaded not guilty.

1

At his trial, the State offered a complaint and a default judgment from a United States Department of Agriculture administrative proceeding. That proceeding was against Appellant. In the complaint, the Department alleged that he did not make payment on six livestock transactions. Appellant apparently did not answer or appear in response to the complaint, and a default judgment was entered against him. In the default judgment, the administrative law judge found that he had issued insufficient funds checks for six transactions totaling $127,674.66 and suspended him from operations subject to the Packers and Stockyards Act for six years.

Appellant objected to the documents on the grounds that they were hearsay. The complaint and judgment were not certified. The State argued that they were admissible as business records, even though the sponsoring witness, a local agent with the Department of Agriculture, did not maintain the documents in his office and was not a custodian of these specific records. The trial court allowed the documents over Appellant's objection. The jury found Appellant guilty as charged. The judge assessed a sentence of imprisonment for ten years. This appeal followed.

## ADMISSION OF RECORDS

In one issue, Appellant argues that the trial court erred in overruling his hearsay objection to the admission of a complaint and a default judgment from an administrative proceeding.

### Applicable Law

We review a trial court's decision to admit evidence over a hearsay objection for an abuse of discretion. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). We will not disturb the evidentiary ruling of the trial court unless it falls outside the zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). The rules of evidence forbid hearsay statements. *See* TEX. R. EVID. 801(d). By rule, hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Id*.

Public records, subject to several exceptions, are admissible as an exception to the hearsay rule. *See* TEX. R. EVID. 803(8). Domestic public documents are self-authenticating if they are under seal. *See* TEX. R. EVID. 902(1). Copies of certified public records are self-authenticating if they are certified correct by the custodian or person authorized to make a certification. *See*

2

TEX. R. EVID. 902(4).

Records of regularly conducted activity are admissible as an exception to the hearsay rule. *See* TEX. R. EVID. 803(6). Often called a business records exception, these kinds of records are admissible if they meet four foundational requirements: (1) the records were made and kept in the course of a regularly conducted business activity, (2) it was the regular practice of the business activity to make the records, (3) the records were made at or near the time of the event that they record, and (4) the records were made by a person with knowledge who was acting in the regular course of business. *See id*.; **Powell v. Vavro, McDonald, & Assocs.**, 136 S.W.3d 762, 765 (Tex. App.–Dallas 2004, no pet.).

**Analysis**

The documents offered by the State were court records. However, the documents did not bear a seal and were not certified. The State does not argue that they are admissible as public records. Instead, the State argued in the trial court, and argues on appeal, that the documents were admissible as records of regularly recorded activity. Appellant argued at trial that the documents were irrelevant and that they were hearsay because the State had not laid a proper foundation for their admission. Appellant does not argue that the documents contain additional hearsay[1] and did not renew his relevancy argument on appeal.

The sponsoring witness for the documents was Philip Warren, a resident agent with the USDA Packers and Stockyards Program. He testified that he was a custodian of records for that program. He also testified that the exhibits were true and accurate copies of the originals. The originals are kept in Washington D.C. He testified further that they appear to have been made by someone who would "have had knowledge of that." However, Warren also testified that he was not a custodian of records in Washington D.C., he had no personal knowledge of the authenticity of the records, he did not maintain these particular records, and these records were not maintained in his office. The State sought to clarify his position with respect to the records with the following questions:

Q:    And again, Mr. Warren, do you have any records in your office?

A:    Yes, I do.

Q:    And those records are records of persons like the Defendant here; correct?

---

[1] *See*, *e.g.*, **Crane v. State**, 786 S.W.2d 338, 353-54 n.5 (Tex. Crim. App. 1990) (otherwise admissible business record may contain inadmissible hearsay).

3

A:      Yes, sir.

Q:      And they are records that are ordinarily kept in the normal course of the Packers and Stockyards Program; right?

A:      Yes, sir.

Q:      So, in fact, you really are a custodian of records if you have records in your possession at your office; correct?

A:      Yes, I am.

Q:      And I'm not asking you did you have this record in your office. I'm just asking you, are you actually a custodian of records for the Packers and Stockyards Program?

A:      Yes, sir.

Appellant renewed his objection, stating that Warren could not testify as to the "authenticity of this particular record." The State asked further questions, including asking if it "appear[ed] to be a document that was prepared by someone within the USDA." The State also asked if the records bore a stamp and if the same cause number was on both documents. Warren answered in the affirmative to each question.

Appellant's objection was a proper one. While Warren was custodian of some records, he was not, by his own admission, a custodian of this record. He did not testify that it was made at the time or near the time of the event it recorded. Importantly, there was no evidence as to where this particular document originated, and Warren testified that he had no personal knowledge as to its authenticity. Warren testified that it was like other documents, but he was unable to testify that he maintained these particular documents.

Rule 803(6) does not require that the person authenticating the record be either the creator of the record or have personal knowledge of the information recorded therein. *See Desselles v. State*, 934 S.W.2d 874, 876 (Tex. App.–Waco 1996, no pet.); *Brooks v. State*, 901 S.W.2d 742, 746 (Tex. App.–Fort Worth 1995, pet. ref'd). Rather, the testifying witness need only have knowledge of how the record was prepared. *Desselles*, 934 S.W.2d at 876. Warren likely did have knowledge as to how the records were prepared. In fact, he later testified that he had served the order on Appellant on two occasions. But before admission of the document, Warren never testified as to how these specific records were prepared or where they were maintained. He disclaimed any personal knowledge of the authenticity of the records. His testimony, in sum, was

4

that he did not maintain the documents, the documents looked like official documents, the complaint appeared to have been signed by his supervisor, and the two documents bore the same cause number. This does not establish that these particular records were made in the ordinary course of business, that they were made at or near the time of the event they record, and that they were made by a person with knowledge who was acting in the regular course of business. *See* TEX. R. EVID. 803(6). Finally, and perhaps most importantly, Warren could not vouch for the authenticity of the documents. Because the foundational requirements were not met to establish that these documents were records of regularly conducted activity, the trial court erred in allowing them into evidence.

Error in the admission of evidence is nonconstitutional error. *See **Johnson v. State***, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Nonconstitutional error that does not affect the substantial rights of the defendant must be disregarded. *See* TEX. R. APP. P. 44.2(b). Therefore, error in the admission of hearsay evidence does not warrant reversal unless it had a substantial and injurious effect or influence in determining the jury's verdict. *See **King v. State***, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

After considering all of the evidence, we hold that this error did not have a substantial or injurious effect or influence on the jury's verdict. A lawyer would know that a complaint in a civil proceeding proves no facts, other than the fact that it was filed. And without more information about how a default judgment is rendered in the U.S. Department of Agriculture administrative law proceedings, a lawyer would know that the default judgment is essentially a rendition of the facts in the complaint. There may be some relevance insofar as Appellant did not contest the complaint, but without more, it is difficult to say that the facts asserted therein, that Appellant had written several bad checks, were actually established by these documents.

Appellant makes an important point, however. Specifically, he argues that it is doubtful that the jury understood the distinction between "the present criminal action and the federal proceeding in Washington D.C." This assertion is accurate as far as it goes, but Warren did testify as to several important facts. Specifically, he stated that the action was civil and that there were no criminal allegations at the federal level. He also conceded that there was no evidence that Appellant knew of the hearing or had counsel present for the hearing and that federal investigations did not look at the intent of a check writer.

Additionally, there was copious evidence admitted, without objection, as to Appellant's

5

writing of bad checks. Specifically, his bank records were admitted. Appellant's October 2007 statement showed that he deposited more than $1.6 million and withdrew or wrote checks for just a little less than that amount. Nevertheless, he had about $1,275.00 in insufficient "paid item" and "returned item" fees. On his November statement, more than $2.2 million was deposited and slightly less was withdrawn. As with the previous month, the account was often overdrawn. Three times the account was overdrawn by more than $100,000.00, and he was charged more than $1,000.00 in insufficient fund fees. The December 2007 statement shows that more than $400,000.00 was deposited and checks of slightly more were presented. The account was regularly overdrawn, and he was charged almost $1,000.00 in insufficient fund fees.

Additionally, the State presented evidence that Appellant had written two checks to another auction business that were not honored. One check was in the amount of $59,533.55, and the other was for $126,312.91. Finally, a banker testified that Appellant defaulted on a loan and that the bank had to foreclose on 130 head of cattle. The bank attempted to foreclose on "thirteen, fourteen hundred" head of cattle, but the banker testified that they could not be located.

Appellant's defense was that he did not have the intent to steal the cattle, and that business difficulties, not an intent to deprive, were behind his failure to make good on the checks that were presented. In addition, Appellant's attorney suggested, although there was scant evidence of this, that the bank had reneged on an agreement to cover the checks.

In light of the copious evidence that Appellant regularly overdrew his account in a significant way, the inadmissible evidence that he had written six checks that were not honored, two of which were the basis of the charge and were proved with direct evidence, did not play a substantial and injurious role in the jury's deliberations.[2] This is especially so because of the testimony that the federal proceeding was based only on the nonpayment of an auction bill and did not include any consideration of intent.

If this evidence had not been admitted, the jury would still know that Appellant wrote checks for tens of thousands of dollars on many occasions when his account was overdrawn. The inadmissible evidence was simply more of the same, and we hold that its admission did not affect Appellant's substantial rights. We overrule Appellant's sole issue.

---

[2] The fact that Appellant had been suspended from the livestock business was introduced elsewhere in the trial without objection, so Appellant was not harmed by the inclusion of that information in the challenged documents. *See **Coble v. State***, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010).

<u>**DISPOSITION**</u>

Having overruled Appellant's sole issue, we ***affirm*** the judgment of the trial court.

<u>**SAM GRIFFITH**</u>
Justice

Opinion delivered July 13, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)